**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil No. 16-1861 (JDB)** |
| **ENVIRONMENTAL PROTECTION AGENCY, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Defendant Environmental Protection Agency has moved for a protective order from eight document requests and a deposition notice that it received from plaintiff Natural Resources Defense Council, Inc. ("NRDC"). NRDC opposes, arguing that it is merely seeking limited discovery into the basis for certain estimates made by an EPA official in a recently filed declaration. For the reasons stated below, the Court agrees with NRDC that its limited discovery requests are proper. Accordingly, the Court denies EPA's motion.

### Background

In March 2018, the Court issued a memorandum opinion ("2018 opinion") and accompanying order ("2018 order") vacating and remanding the EPA's approval of a total maximum daily load plan ("TMDL") developed jointly by Maryland and the District of Columbia to limit the amount of trash entering the Anacostia River. See Nat. Res. Def. Council v. EPA ("NRDC"), 301 F. Supp. 3d 133, 136 (D.D.C. 2018). The Court stayed vacatur, however, to afford EPA time to develop a new TMDL. Id. Although NRDC requested that the Court impose a

1

specific deadline on EPA, the Court declined to impose one, noting that EPA was already mandated by statute to "act diligently." Id. at 145 (citing 5 U.S.C. § 706(1)).

Nearly two years later, NRDC moved for the Court to impose a one-year deadline on EPA, arguing that EPA was not acting swiftly enough and that, absent Court intervention, the TMDL-development process would "meander on for years more, denying legally mandated protections to the river, the communities along its banks, and those who come to enjoy it." Pl.'s Mot. to Set a Deadline for Final Action on Remand ("Deadline Mot.") [ECF No. 39] at 1. That motion is pending. EPA opposes, arguing in part that a one-year deadline is "too short to permit development of a robust TMDL that will accomplish its intended purpose." EPA's Opp'n to Pl.'s Mot. to Set a Deadline for Final Action on Remand ("EPA Opp'n to Deadline Mot.") [ECF No. 43] at 3.

As support for that argument, EPA filed a declaration by Jillian Adair, EPA's Maryland TMDL Coordinator and Trash TMDL Coordinator for the Water Division. Adair Decl. [ECF No. 43-1] ¶ 1. EPA relies on Adair's declaration to provide the "best estimate regarding the time needed" to develop a new TMDL. EPA Opp'n to Deadline Mot. at 11. Adair's declaration outlines seven steps that remain in the TMDL-development process and provides an estimated time to complete each step. See Adair Decl. ¶ 9. In total, Adair estimates that it will take sixty more months, or five years, to finalize a new TMDL. See id. EPA argues that "Adair's explanation of the time needed contravenes NRDC's conclusory assertion that EPA can approve or complete a TMDL within a year." EPA Opp'n to Deadline Mot. at 12.

Following EPA's filing of its opposition and Adair's declaration, NRDC requested (and received) an extension of time to file its reply in support of its motion to set a deadline. See March 4, 2020 Minute Order. That extension in hand, on March 6, 2020, NRDC served EPA with eight requests for document production, seeking documents and information referenced in or supporting

the time estimates from Adair's declaration, and noticed a deposition of Adair.  See Opp'n to

Defs.' Mot. for Protective Order ("NRDC Opp'n") [ECF No. 49] at 4.  EPA requested (and

received) a three-week extension of time to respond to the discovery requests, but on April 23

notified NRDC that it would not be complying with NRDC's discovery requests.  Id. at 5.

EPA then filed the present motion for a protective order, arguing that the discovery sought

by NRDC should be quashed because it is (1) "not proper in this record review case" and

(2) outside the permissible scope of discovery under Fed. R. Civ. P. 26(b)(2)(C).  See Defs.' Mot.

for Protective Order ("EPA Mot.") [ECF No. 47] at 4.  The motion is now fully briefed and ripe

for decision.

## Discussion

Before the Court can determine whether any discovery is warranted for NRDC's pending

motion to set a deadline, or if the Court should instead enter EPA's desired protective order, the

Court must first identify the relevant legal standard governing NRDC's motion, as the applicable

standard will frame the subsequent discovery analysis.  NRDC did not initially specify the precise

procedural basis for the motion; however, it was clear from NRDC's opening brief that the motion

sought to amend the remedy granted in the 2018 order based on new information that has arisen

since that order.  See Deadline Mot. at 3–4 (arguing that the Court should now impose a deadline

because EPA has acted at a "snail's pace" and shown a "lack of progress" since the 2018 order).

NRDC's briefing has since made explicit what was previously implicit: in NRDC's view, its

motion should be evaluated under Fed. R. Civ. P. 54(b), which authorizes a court to revise an order

"at any time before the entry of a judgment adjudicating all the claims and all the parties' rights

and liabilities."  NRDC Opp'n at 5 (quoting Fed. R. Civ. P. 54(b)).  EPA, for its part, primarily

argues that Rule 60(b)(6), governing "relief from a final judgment, order, or proceeding," applies

to the motion.  See EPA Mot. at 7–8.  The resolution of which standard applies to NRDC's motion, then, turns on whether the Court entered "final judgment" in 2018.

As noted, the Court's 2018 order (1) vacated EPA's approval of the 2010 TMDL, (2) stayed vacatur pending approval of a replacement TMDL, and (3) remanded to EPA for further action. Mar. 30, 2018 Order [ECF No. 27] at 1.  It is black letter law that "[a] remand order usually is not a final decision."  NAACP v. U.S. Sugar Corp., 84 F.3d 1432, 1436 (D.C. Cir. 1996); see Occidental Petro. Corp. v. SEC, 873 F.2d 325, 329 (D.C. Cir. 1989) ("The courts of appeals that have considered the question . . . have uniformly held that, as a general rule, a remand order is 'interlocutory' rather than 'final.'").  EPA has not suggested that the exception to this general rule, "where the agency to which the case is remanded seeks to appeal and it would have no opportunity to appeal after the proceedings on remand," Occidental Petro. Corp., 873 F.2d at 330, is relevant here.

Nor has EPA offered any basis for its assumption that the Court entered final judgment in 2018 (and thus that Rule 60(b) applies).  Indeed, EPA concedes that judges in this District have determined in similar circumstances that remand orders are not final.  See EPA Mot. at 8 n.8; cf. AARP v. EEOC, 292 F. Supp. 3d 238, 241 n.1 (D.D.C. 2017) (noting, despite both parties treating as final an order that remanded to an agency for further proceedings, that a motion seeking to revise that order "may be better thought of as a request to revise a non-final judgment—which would invoke the Court's inherent equitable powers and Rule 54(b)—rather than as a motion to alter a final judgment").  Hence, because EPA has made no compelling argument that this Court's 2018 order was final, the Court concludes that Rule 54(b) is the relevant standard for NRDC's motion to set a deadline.

Under Rule 54(b), a court may grant relief "as justice requires," Capitol Sprinkler Inspection, Inc. v. Guest Servs. Inc., 630 F.3d 217, 227 (D.C. Cir. 2011), which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances," Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). To determine whether "justice requires" reconsideration of a previously issued interlocutory order, a court considers whether it "patently misunderstood a party[,] . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted). Thus, a court may grant a Rule 54(b) motion for reconsideration if there are "good reasons for doing so." Rosenberg v. U.S. Dep't of Def., 2020 WL 1065552, at *4 (D.D.C. Mar. 5, 2020). Rule 54(b) motions may properly be granted, for instance, where the movant presents the court with "new information" justifying reconsideration. See Doe I v. Exxon Mobil Corp., 2019 WL 2348100, at *3 (D.D.C. June 3, 2019).

NRDC makes just such a "new information" argument in its motion to set a deadline. It argues that, since the Court issued its 2018 order, new information has come to light that should make the Court reconsider its prior decision not to impose a deadline on EPA—namely, what NRDC calls EPA's slow and "meander[ing]" pace of  development that has resulted in "scant progress" toward a new TMDL since 2018. Deadline Mot. at 1–2. In support of that argument, NRDC has cited a number of cases where courts have concluded that a deadline is appropriate for the establishment of a TMDL, see id. at 5 (collecting cases), and a case where a court concluded, in the context of a Rule 54(b) motion, that it was appropriate to impose a deadline on agency action, see NRDC Opp'n at 6 (citing Air Transp. Ass'n v. U.S. Dep't of Agriculture, 317 F. Supp.

3d 385, 392 (D.D.C. 2018)).  This Court will not resolve the merits of NRDC's deadline motion today; it notes only that NRDC's motion is not frivolous or improper.

Given that NRDC's motion is appropriately before the Court under Rule 54(b), the Court must next determine whether NRDC is entitled to conduct limited discovery into the basis for Adair's estimate that roughly five more years are necessary to establish a new TMDL.  Under Fed. R. Civ. P. 26, the scope of discovery is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  However, a court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative."  Fed. R. Civ. P. 26(b)(2)(C).  EPA makes a variety of arguments as to why NRDC's discovery requests are improper under Rule 26.

First, EPA argues that the discovery requests are not relevant to any claim or defense, because the only "bona fide issue before the Court at this time" is "whether NRDC has made the threshold showing needed to seek an amendment of the remedy awarded in the Court's two-year-old judgment."  EPA Mot. at 6.  This argument largely relies on EPA's mistaken assumption that Rule 60(b)(6) applies to NRDC's motion.  As noted, Rule 54(b) is the relevant standard here, and under Rule 54(b), new information or a "significant change in the . . . facts since the submission of the issue to the Court" can constitute "good reason" to grant a motion to amend.  Doe I, 2019 WL 2348100, at *3; Singh, 383 F. Supp. 2d at 101.  That is the bona fide issue for purposes of NRDC's motion—whether new information justifies amendment of the Court's 2018 order to impose a deadline.  The length of time that has already elapsed, and according to Adair's

6

declaration will continue to elapse, is new information that was not previously available to NRDC. The validity and basis for Adair's declaration, then, are clearly "relevant" to NRDC's motion— indeed, if they were not relevant, then it would have been equally improper for EPA to have introduced her declaration in the first place as it would be for NRDC to seek limited discovery into the basis for her opinions now.

Relatedly, EPA contends that NRDC should be restricted to the administrative record. The argument proceeds like this: when NRDC filed this suit, it was challenging EPA's 2010 approval of the TMDL developed by Maryland and D.C. See Defs.' Reply in Supp. of their Mot. for a Prot. Order ("EPA Reply") [ECF No. 51] at 1–2. The Court's review of that approval was circumscribed to the administrative record. NRDC, 301 F. Supp. 3d at 140. Therefore, the argument goes, the Court's decision whether to grant NRDC's motion (filed in 2020) to set a deadline must also be made based on the 2010 administrative record, without the benefit of any discovery or new information. EPA Reply at 2–3.

This argument fails for two reasons. First, it cannot be squared with the broad scope of discovery under Rule 26 and the fact that NRDC is not, at this point, challenging EPA's approval of the 2010 TMDL, but is instead arguing that new information has arisen since the 2018 order that warrants amendment and the imposition of a deadline for EPA's development of a new TMDL. (In fact, under EPA's view that review is confined to the administrative record, the Court would presumably have to ignore the extra-record evidence that EPA has itself introduced—the Adair declaration.) Second, EPA is "confusing a challenge to agency action generally—as was the case originally in this litigation—and a court's monitoring of compliance with its own orders." Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs, 842 F. Supp. 2d 127, 131 (D.D.C. 2012). While this Court did not impose a deadline on EPA in 2018, its choice not to do

so was predicated on EPA's statutory obligation to "act diligently," which the Court "fully expected" EPA to comply with.[1] NRDC, 301 F. Supp. 3d at 145.  NRDC now raises a question as to whether EPA is complying with that obligation.  It is within the Court's power to ensure that EPA is doing so, and to amend its 2018 order under Rule 54(b) if warranted, even if the Court must "allow some discovery" to evaluate NRDC's claim.  Nat'l Law Ctr., 842 F. Supp. 2d at 131; see Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (emphasizing the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015) ("Rule 54(b)'s approach . . . can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." (internal quotation marks omitted)).  The Court therefore rejects EPA's argument that NRDC's motion must be decided solely on the administrative record.

Next, EPA argues that the discovery requests propounded by NRDC are "duplicative and unreasonably cumulative," EPA Mot. at 8, and therefore the Court should bar the discovery under Rule 26(b)(2)(C).  As support, EPA points out that it has already produced some documents relevant to NRDC's discovery requests in response to an August 16, 2019 Freedom of Information Act ("FOIA") request made by NRDC.  Id. at 9.  NRDC acknowledges that some documents have been produced, but states that EPA has provided documents only up to the date of the FOIA request, August 16, 2019, and thus has produced no responsive documents from the past nine

---

[1] EPA also argues that NRDC's motion is an inappropriate attempt to assert an "APA Section 706(1) unreasonable delay claim . . . in the guise of a motion to amend the 2018 Judgment."  Reply at 5–6.  But EPA does not appear to dispute that the Court could have imposed a deadline in its original 2018 order.  See EPA Mot. at 2 (contending that NRDC's deadline motion is an "attempt to obtain the remedy it was expressly denied"); cf. Friends of the Wild Swan v. EPA, 74 F. App'x 718, 722–23 (9th Cir. 2003) (affirming district court's imposition of TMDL deadline on EPA under APA § 706(2)).  EPA fails to explain why it is inappropriate for NRDC to request, on a Rule 54(b) motion, an amended order to provide relief that the Court had the power to provide in its original 2018 order.  For instance, the Court could have simply made—and still could make—its stay of vacatur of the 2010 approval expire at a designated time.

months, including no documents discussing the subject matter of the Adair declaration: "the time needed to complete the TMDL or the individual steps in its development."  NRDC Opp'n at 12. NRDC notes that if EPA is attesting that it has already produced all responsive documents up to August 16, 2019, then it has no objection to EPA producing only responsive documents from <u>after</u> that date.  <u>Id.</u> at 12 n.5.  Given that concession, the Court concludes that NRDC's document requests and deposition notice are not "cumulative or duplicative"—NRDC has not received any of the documents that it requests, so none could be cumulative or duplicative.[2]

Finally, EPA briefly argues that a weighing of the factors identified in Rule 26 demonstrates that the discovery requests are not "proportional to the needs of the case."  EPA Mot. at 6.  This argument relies mostly on its assertion that the discovery requests are cumulative or redundant, which the Court has already rejected.  Upon consideration of the relevant Rule 26 factors, the Court concludes that the modest discovery requests at issue here—eight document requests and a single deposition—are proportional to the needs of the case.  First, the issues at stake here are significant.  As the Court noted in its 2018 opinion, the Anacostia River and its watershed are "home to over 800,000 people," <u>NRDC</u>, 301 F. Supp. 3d at 138, and the longer that the development of a TMDL is delayed, the longer those people will be subjected to trash pollution. Second, as to "the parties' relative access to relevant information," Fed. R. Civ. P. 26(b)(1), NRDC currently has no access to the relevant information.  Third, with respect to "the parties' resources," <u>id.</u>, the Court acknowledges EPA's concern that it will have to expend time and effort preparing Adair for a deposition.  EPA Mot. at 10.  Still, it is only a single witness, and NRDC has promised to be as flexible as possible in scheduling and conducting the deposition.  <u>See</u> NRDC Opp'n at 13–

---

[2] EPA suggests that its twice-yearly status reports might suffice to provide NRDC with the information it needs.  EPA Mot. at 10.  However, the Court has reviewed the status reports submitted by EPA, and none of them include any information about the basis for Adair's estimate of the time remaining to develop a new TMDL. <u>See, e.g.</u>, Feb. 19, 2020 Status Report [ECF No. 41].

14.   Additionally, to further mitigate the potential burden on EPA, the Court will limit the deposition of Adair to three hours in duration.  Fourth, limited discovery will assist the Court in determining whether to grant NRDC's motion to set a deadline,[3] and this benefit to the ends of justice outweighs the burdens associated with the discovery.  Each of the relevant factors, therefore, weighs in favor of permitting NRDC's discovery requests.[4]  Accordingly, the Court will allow NRDC's discovery requests to proceed (with the one limitation as to the duration of the deposition) and will not enter a protective order.[5]

### Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that EPA's [47] motion for a protective order is **DENIED**.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: June 2, 2020

---

[3] The Court is aware that this opinion and the to-be-conducted discovery may mean that the parties—and the Court—would benefit from additional briefing on NRDC's motion to set a deadline.  The Court expects the parties to work together to the extent possible in submitting any requests for additional briefing, if it should prove necessary.

[4] The Court emphasizes that this decision is based, in large part, on the limited nature of NRDC's present discovery requests, and the Court would look warily upon any further attempts to conduct discovery.

[5] EPA raises some concerns about the logistical difficulties associated with conducting a deposition via videoconference during the COVID-19 pandemic.  See EPA Mot. at 11 & n.9.  The Court sympathizes with those concerns.  But the difficulties identified by EPA—internet connectivity problems, participants talking over each other, and confusion—are not unique to this case.  Across the country, attorneys and judges are learning to overcome these difficulties and conduct remote proceedings with some semblance of normality.  The Court is confident that EPA and NRDC, too, will be able to overcome any technical or logistical problems and conduct a single deposition remotely, as is permitted by Fed. R. Civ. P. 30(b)(4).